## SUPERIOR COURT

### No. 458
### OSKAMP v. OSKAMP
Superior Court of Cincinnati
No. 55982. Decided April 22, 1925
On motion for a new trial.

**949. PRESUMPTION—Exists that advice of parents and brothers and sisters are actuated by and proceed from good motives.**

**841. NEW TRIAL—On ground of excessive verdict not to be granted unless the amount is so plainly and outrageously excessive as to suggest at first blush, passion, prejudice or corruption on part of jury.**

MARX, J.

The defendants herein sought to have a motion for a new trial in this case, in which Louise Oskamp was favored in this court with a verdict and judgment thereon of $100,000, in an alienation of affection suit against Wm. Oskamp. Louise Oskamp married Herbert, son of Wm. Oskamp in 1913 with the approval of his parents. The evidence showed that they lived in apparent happiness which was characterized by the unceasing affection and devotion on part of either. In 1921 it was discovered that Herbert had swollen glands in his throat which became worse and developed into Hodgkins disease. The wife and parents of Herbert Oskamp were advised that he had but a short time to live and the father decided to take his son to Europe in hope of effecting a cure. Louise, the wife, was refused permission by the father from going along with her husband, although she offered to pay her own expenses. During Herbert's stay abroad Louise, in going to a safety deposit where she and husband stored articles of value found that his will and some stock were missing. Having no knowledge that her husband had changed his will and had given the stock to his father, she transferred the contents to a different Trust Company.

Friendly relations with the family ceased and soon the wife received letters from the husband pronouncing his entire married life a failure. Her allowance was stopped, detectives were hired to shadow her, her credit was stopped and she was otherwise humiliated.

When she demanded to see the letter from Oskamp, stopping her allowance she was ejected from the Oskamp's place of business and threatened with violence by one, Gordon Oskamp, brother of Herbert.

On Herbert's return from Europe, she was not admitted to see him as he went directly

to the home of his parents; and her letters and efforts to see her husband were destroyed and frustrated by the family.

Divorce proceedings were subsequently instituted. Louise Oskamp then brought this action, wherein she recovered damages as above for $100,000. The Superior Court in overruling the motion for a new trial held:

1. The fact that Louise was called "dirty dog" and "dirty liar" by Herbert prove that his mind weakened—had been venomously poisoned against the wife to whom he had been so devoted for nine years. There can be no question that his affection had been alienated.

2. No other influence but that of his family reached him, there being nothing in the life of Louise, before or during her marriage to explain or warrant the hatred of her husband. Although shadowed by detectives, not a scintilla of evidence was offered at the trial which cast the slightest suspicion or blemish on her good character, wifely devotion, faithfulness and devotion to her husband.

3. The sole issue was whether the defendants were guilty of separating Herbert from his wife and maliciously poisoning his mind against her. This issue was fairly and fully submitted to the jury in the form of interrogatories and special charges prepared by the defendants and granted by the court, and also in the general charge. In both special and general charges the defendants were given the benefit of the presumption of law that parents proceed from good motives in advising and sheltering their children. Holts v. Dick. 42 OS. 23. The presumption was even extended to the brothers and sisters.

4. In view of the mortification, pain, distress of mind, injury to her feelings and affections, wounded pride, loss of prestige or position and advantages of a home; it does not appear that the verdict exceeds what might be fairly considered compensation, but if the verdict includes punitive damages, the jury were well within their rights to consider the apparent wealth of the defendants. Motion for a new trial overruled.

Attorneys—Nicholas, Morrill, Stewart & Ginter for plaintiff; Froome Morris, Chas. E. Dornette and Thos. L. Michie for defendants; all of Cincinnati.

---

### THE DIFFERENCE

Between being a subscriber and reader of the Ohio Law Abstract, and not being, may often be the difference between winning and losing a case. The Abstract is a real protection to the lawyer who takes it and reads it promptly every week.

---

## PUBLISHER'S COLUMN

# The Ohio Law Abstract

Entered as second class matter, February 28, 1923, at the Post Office, Cleveland, Ohio, under the Act of March 3, 1879

Issued Every Wednesday          50 Weeks of the Year

### SUBSCRIPTION PRICES AND TERMS

One year (50 issues) Payable in Advance........$15.00
Single Numbers ............................... .35

When cash is mailed to us in advance 20 per cent discount

Address all communications to

### THE LAW ABSTRACT COMPANY

13916 Euclid Avenue, Cleveland, O.
P. O. Box 55, East Cleveland Sta.

---

### EXPIRATIONS

We send notices to subscribers, four weeks in advance of the date to which their subscription is paid, thus assuring them of ample knowledge in time to prepay renewals, and save the 20 per cent we give to those who mail the money in advance.

---

If you want your law library more nearly perfect, and increase its service to you, by giving you the immediate state wide output of current cases, without your being compelled to wait for the generally tardy bound volumes, take the Abstract and consult it whenever you want an authority.

---

The Abstract supplements every Ohio Law Library, by supplying a resource that serves as a bridge between cases of the past and decisions on the immediate present, and thus keeps down to date every set of Ohio case law reports.

---

The Abstract service is not confined to any one division or section of the law, but every branch and department coming under the category of general practice of an Ohio attorney, is well and impartially covered by it. The more than 1500 new Ohio cases it broadcasts annually, and of which it gives the first and often the exclusive publicity, give some authority upon almost every situation imaginable, and thus supply the lawyer who reads it attentively, with a splendid vocabulary of the latest new precedents and the annulled and disturbed old ones, fresh from the Bench. Its benefits are so palpable that most practitioners have come to view it as absolutely indispensible to safe and satisfactory work. And its cost is so incomparable viewed as against the many benefiits it bestows, that the charge for it is met promptly and pleasureably.